NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0363n.06
File Name: 09a0363n.06

No. 08-1301

FILED
May 22, 2009
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SUZANNE CONTI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United |
| | ) | States District Court for the |
| AMERICAN AXLE AND MANUFACTURING, | ) | Eastern District of Michigan |
| INC., | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| | ) | |
| SOMMERS SCHWARTZ, PC, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Before: GUY, CLAY, and COOK, Circuit Judges.

CLAY, Circuit Judge. Plaintiff, Suzanne Conti ("Conti"), appeals the order of the United States District Court for the Eastern District of Michigan granting summary judgment in favor Defendant, American Axle & Manufacturing, Inc. ("American Axle" or "AAM"), as to Conti's employment discrimination and retaliation claims asserted under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, *et seq.* (2008), and the Federal Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). Conti also challenges the district court's order denying her request to depose American Axle Co-Founder, Chairman, and CEO Richard Dauch ("Dauch"). Finally,

Conti challenges the district court's order permitting her former counsel in this action, Sommers Schwartz PC, to withdraw as counsel over her objection and initiate a lien against any damages Conti may recover in this action.

For the following reasons, we hereby **REVERSE** the judgment of the district court regarding Conti's request to depose CEO Dauch, **VACATE** the district court's decision to grant summary judgment in favor of American Axle, and **VACATE** the district court's judgment affirming the magistrate judge's denial of Conti's motion for declaratory judgment regarding her dispute with Sommers Schwartz PC.

## I.  BACKGROUND

American Axle is a multi-national corporation, headquartered in Michigan, specializing in manufacturing automobile parts. In this action, Conti, a female executive at American Axle, asserts claims of gender discrimination and retaliation against her employer.

Conti joined AAM in 1997 as a Salaried Executive in Training ("SEIT"), becoming Commodity Manager in the Procurement department. In 2003, Abdullah Shanti ("Shanti"), then-Vice President of Procurement, promoted Conti to co-Director of Indirect Material Strategic Sourcing. In that position, Conti was a peer to co-Director Larry Earhart ("Earhart"). Until Conti's promotion, Earhart had been acting as the lone Director of that department since 2001, and was Conti's direct supervisor. A few months after Conti's promotion, in June 2003, Conti and Earhart both were "transferred" out of the department and into new positions. Earhart was transferred to a non-executive position in the Quality Development department, while Conti was transferred to the

New Model Launch division of the Materials Department. Although Conti retained her co-Director salary, she was demoted back to an SEIT position, a title she had not held since she first joined AAM. After her demotion and transfer, Conti reported directly to Mike Pannucci ("Pannucci"), Director of New Model Launch at that time. In January of 2004, after Pannucci vacated the Director position, Conti was promoted to the vacant position, but was given the title of "Manager" rather than "Director."

In her complaint, Conti claims that she has hit a "glass ceiling" at American Axle, and that her experience is a direct product of the company's gender-biased promotion and pay practices. Conti complains that she has not received the same salary increases or the same opportunity for advancement and training as her male counterparts. In particular, Conti alleges that she was promoted to the co-Director position only after American Axle promoted a less-qualified male, Earhart, nearly two years before her. She also asserts that, although she received approximately the same salary as Earhart, he was promoted to a higher salary "band" which afforded him the opportunity to receive larger executive bonuses. In addition, Conti alleges that her promotion to Manager rather than Director of the New Model Launch division was discriminatory because she received a lower title and less pay than her immediate male predecessor, Pannucci, despite the fact that she performs essentially the same work. According to Conti, she was treated unequally because of her sex, and also as retaliation for her decision to testify against the company's interests in a deposition in a prior discrimination suit also arising out of gender-biased hiring practices at American Axle. Conti further claims that American Axle's discriminatory employment practices are a reflection of the discriminatory attitudes of its CEO.

Conti also challenges the district court's decision to deny her request to depose Dauch, AAM's Co-Founder, Chairman, and CEO. During discovery, Conti timely noticed the deposition of Dauch. AAM, however, moved for a protective order to strike the deposition notice. While this motion was pending, the discovery period closed. On January 17, 2007, the district court entered an order extending the discovery period for the limited purpose of permitting Conti to serve written interrogatories on Dauch. On March 16, 2007, the magistrate judge denied AAM's motion for reconsideration and reaffirmed its order. The district court subsequently affirmed that judgment. J.A. 986-89.

After Dauch answered the interrogatories served by Conti, Conti again sought to depose Dauch, and AAM again sought a protective order. When the magistrate judge finally ruled on the issue on June 27, 2007, it dismissed AAM's request for a protective order "without decision" because, by that time, Conti's counsel had withdrawn from the case and thus she was unrepresented. That order expressly anticipated that, after Conti's new counsel entered an appearance, "it is likely that a new scheduling order will be entered." J.A. 1097.

Although the Dauch deposition issue was pending, the discovery period had closed and thus American Axle moved for summary judgment. When Conti's new counsel eventually entered an appearance, the court lifted the stay and set a response deadline with respect to AAM's motion for summary judgment. Conti's new counsel thereafter filed an "Emergency Motion for Extension of Dates," seeking to extend the discovery period so that newly entered counsel would have an opportunity to renew Conti's request to depose Dauch. On September 20, 2007, the magistrate judge rejected that request. Conti's new counsel then moved the court for leave to "extend/re-open

discovery," essentially seeking to renew Conti's request to pursue the Dauch deposition. J.A. 1426-36. AAM again opposed Conti's request, but not on the grounds that a protective order was warranted, but rather because the motion for leave to reopen amounted to an improper motion for reconsideration of the court's September 20, 2007 order. J.A. 1437-61.

On October 25, 2007, well over a year after Conti originally sought to depose Dauch, the magistrate judge denied Conti's request to re-open discovery in order to depose Dauch. Despite the fact that the court's January 17, 2007 order expressly anticipated that Conti's substitute counsel might renew Conti's request to depose Dauch, and notwithstanding that the court never granted AAM's motion for a protective order, J.A. 1097-98, the magistrate judge reaffirmed its September 20, 2007 order denying Cont's request to reopen discovery. The district court affirmed the magistrate judge's procedural approach and denial of Conti's motion to reopen discovery in order to depose Dauch. J.A. 2508-10.

After briefing on AAM's summary judgment motion was completed, the district court granted summary judgment in favor of American Axle, denying Conti relief on all claims.

This timely appeal followed.

## II. CONTI'S DISCOVERY CLAIM

"The scope of discovery is, of course, within the broad discretion of the trial court. . . . An order denying further discovery will be grounds for reversal only if it was an abuse of discretion resulting in substantial prejudice." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (internal quotation marks and citation omitted). Therefore, the decision to issue a protective order is left to "the broad discretion of the district court in managing the case." *Lewelling v. Farmers Ins.*

No. 08-1301
*Conti v. American Axle*

*of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989).

Nevertheless, although the district court has discretion in managing discovery, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis*, 135 F.3d at 402. As the Supreme Court has instructed, because "discovery itself is designed to help define and clarify the issue," the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The operative test in determining whether discovery on a particular matter is permissible is "whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970).

AAM argues that Conti should not be permitted to depose Dauch because he was not personally involved in and did not have personal knowledge of the employment decisions at issue here, and that the information Conti seeks was available through other deponents. According to AAM, Dauch "has not been involved in any significant decision pertaining to [Conti's] employment," and "Conti never reported to Mr. Dauch and Mr. Dauch never supervised her work." J.A. 34. In response, Conti points to record evidence showing that Dauch hired her, interacted with her regularly, and likely was aware of her decision to testify against the company's interests in a deposition in another discrimination suit. Conti also claims that the record shows that Dauch likely was involved in or had knowledge of the particular employment decisions at issue here, namely Conti's 2003 demotion and her 2004 "promotion" to manager, as opposed to director, of the New Model Launch division. Finally, Conti alleges that she should be permitted to question Dauch

- 6 -

regarding his writings evincing his gender-biased attitudes, as well as the role that his management style has played in her stalled advancement at the company.

Although the record supports AAM's claim that Conti never reported directly to Dauch, it does not support its broader suggestion that Dauch has not been involved in decisions relating to Conti's employment. For instance, Conti claims that AAM demoted her as retaliation for her protected activity related to her decision to testify "truthfully" but against the company's interests in a prior discrimination suit brought against the company. The district court rejected this argument on the grounds that Conti had failed to demonstrate that her direct superiors were aware of her decision to provide deposition testimony that would have been adverse to the company. But the record suggests otherwise. According to Conti, she informed in-house counsel for American Axle that Roy Langenbach, her former boss, instructed her not to hire two female applicants, whom Conti judged to be "very capable candidates," because "one was a mother [and another] one was overweight."[1] J.A. 98. Although it is unclear whether Shanti, her direct supervisor at the time, was aware of Conti's intentions, the record suggests that Dauch was aware of this information. In his response to Conti's written interrogatories, Dauch acknowledged that he "retained trial counsel reports to AAM staff counsel," and received "periodic reports on litigation matters" from AAM's

---

[1]Conti claims that, in 2003, she informed counsel for AAM that she intended to disclose Langenbach's statements during a deposition which was scheduled in a discrimination suit brought against AAM by a former employee, Terri Van Zoest ("Van Zoest"). Conti alleges that AAM retaliated against her for this protected conduct, claiming that her deposition in that case was cancelled and the suit settled almost immediately after AAM became aware of Conti's intention to testify about these alleged statements, and that she was demoted shortly thereafter.

staff counsel.  J.A. 1494.  From this, it follows that he would have been aware of Conti's decision to testify against the company's interests.

As to this particular issue, AAM argues that the denial of Conti's discovery request was proper because, "while Mr. Dauch received periodic updates on litigation matters, there is no evidence that he received any specific information regarding Conti's alleged discussions with counsel."  Def. Br. at 41.  But that argument seems to put the cart before the horse inasmuch as deposing Dauch is necessary to determine precisely what information was relayed to him by AAM's staff counsel.  As the record stands, there is no dispute that Dauch received updates regarding pending litigation, and everyone agrees that Conti made clear her intention to testify against the company's interest in a scheduled deposition in a pending lawsuit.  Shortly thereafter, the case was settled, and a few months later Conti was demoted.  Although the factual record currently may be insufficient to support a claim of retaliation, *see West v. Gen. Motors Corp.*, 665 N.W.2d 468, 473 (Mich. 2003) ("Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed."), it is more than sufficient to support further discovery.

That is especially true considering that, contrary to AAM's portrayal of Dauch as an aloof, hands-off CEO, significant record evidence attests to Dauch's personal involvement in and control over all aspects of his company.  For example, Conti points to a 2006 article characterizing Dauch as "run[ning] his empire like a front-line general, relying on a mixture of fear and respect."  J.A. 79.  Deposition testimony from AAM executives confirms that characterization.  *See* J.A. 114-18.  For instance, at least one AAM executive testified that Dauch personally identified "goals and

objectives" for his executives.  J.A. 116.  Moreover, Earhart, who was Conti's direct supervisor before her promotion to the co-Director position in 2003, admitted that his performance reviews of Conti were influenced by the "pressure of that relationship," presumably referring to Dauch's involvement in Conti's career.  J.A. 115.

Such testimony casts serious doubt on the dissent's contention that Dauch's overarching influence and management style had "no real bearing on decisions about Conti."  Dissenting Op. at 3.  In fact, Conti testified that her supervisors informed her that certain employment decisions related to this suit "came from the very top."  J.A. 95.  In support of that claim, Conti points to her daily notes from March 2004 which indicate that she was told that "the only one who [can change her bonus percentage] is 'the old man' Dick Dauch."  J.A. 129.  Like the district court, the dissent simply ignores this record evidence.

Our conclusion also finds support in the fact that Dauch played a direct role in the decision to hire Conti in 1997.  Even American Axle does not dispute Dauch's personal involvement in Conti's hiring.  Although the district court acknowledged this fact, it failed to recognize the significance of this evidence.  Obviously, the fact Dauch played a direct role in Conti's hiring does not conclusively show that he was involved in any of the adverse employment decisions at issue here, many of which occurred several years later.  Nevertheless, Dauch's personal involvement in Conti's hiring does directly contradict his statement that he has "no independent or unique knowledge of employment decisions made with respect to Ms. Conti's employment with AAM." It also casts serious doubt on AAM's portrayal of Dauch as aloof and uninvolved in employment

decisions. Indeed, Dauch himself acknowledges that he "was informed of" and "approved" employment decisions relating to Conti. J.A. 1495.

Downplaying these statements, AAM repeatedly insists that Dauch was only marginally aware of issues related to Conti's employment status because, as AAM puts it, Dauch is "the highest ranking official" at "a company employing more than 10,000 employees in nine countries worldwide." J.A. 34. But Conti and Dauch were not separated geographically, as both worked at AAM's corporate headquarters in Michigan. And although AAM is a large company, only one direct supervisor separated Conti from Dauch. Moreover, the record suggests that the two interacted on numerous occasions, and perhaps frequently. Despite AAM's claims to the contrary, the record thus suggests that Dauch likely has knowledge that is directly relevant to Conti's claims.

At the very least, Dauch will be able to testify as to why he hired Conti and initially supported her advancement, a topic directly relevant to AAM's claims that Conti was less qualified for promotion than some of her male peers. Like the district court, the dissent entirely ignores the relevance of this line of questioning, an issue about which Dauch undoubtedly has personal knowledge.

Taken together, this record evidence casts serious doubt on the district court's conclusion that Dauch was not aware of and played no role in any decision relevant to this action. Contrary to AAM's characterization of Dauch as aloof and uninvolved, a characterization that the dissent uncritically accepts, the record instead suggests that Dauch played an active and direct role in at least ceratin employment decisions. In our opinion, the district court abused its discretion by precluding

Conti from deposing Dauch as to whether the particular employment decisions at issue here fell within that category.

The dissent contends that this evidence, even taken cumulatively, shows only that "further discovery might provide a more thorough record," but falls short of showing that "the district court abused its discretion to the point of causing substantial prejudice." Dissenting Op. at 3. We disagree. The record demonstrates that Dauch likely was aware of Conti's decision to testify against the company, and that the adverse employment decisions at issue here likely "came from the very top." Although the record at this point shows only that Dauch's involvement was likely, that is only because the district court improperly precluded Conti from deposing Dauch on these issues.

The cases on which AAM relies are not to the contrary as most involve corporate officers who had little if any interaction with the employees bringing claims against the company. For instance, in *Bush v. Dictaphone Corp.*, 161 F.3d 363 (6th Cir. 1998), this Court affirmed the district court's decision to allow only a limited deposition of the President and Chief Operating Officer of Pitney Bowes, and denied deposition of its CEO. *Id.* at 366. In that case, however, we found that the record did not show that these officers "even knew that [the plaintiff] had been terminated, much less that they in some way caused it." *Id.* at 367. Nevertheless, even on that thinnest of records, we found that limited discovery of one of the officers was appropriate, reasoning that the district court's approach was "a reasonable way to *balance* Bush's right to discovery with the need to prevent 'fishing expeditions.'" *Id.* (emphasis added). In light of the far more significant evidence suggesting Dauch's knowledge of decisions relating to Conti's employment at AAM, we conclude that the balance of interests suggests that reasonable discovery should have been permitted here.

The cases on which the dissent relies are equally inapposite. For example, the Tenth Circuit's decision in *Thomas v. IBM*, 48 F.3d 478 (10th Cir. 1995), sheds very little light on the issue we confront here. In addition to the same lack-of-knowledge claim raised by Dauch and AAM here, the defendant in *Thomas* also argued that a protective order was warranted because plaintiff's discovery request (1) violated the court's local discovery rules, (2) the plaintiff failed to depose any other IBM personnel, including direct supervisors, and (3) the deposition would have imposed a "severe hardship" on the intended deponent, IBM's Chairman of the Board. *Id.* at 483-84. None of those three significant factors is present in this case. To the contrary, as the record demonstrates, Conti provided more than ample notice of her intent to depose Dauch, attempting to ascertain Dauch's availability for deposition as early as April of 2006, and maintaining communication with defense counsel on this issue throughout that summer. In fact, it was defense counsel who decided to seek a protective order at the eleventh hour, cancelling a deposition scheduled for September 29, 2006 with only a few days notice, and just before the close of discovery. Consequently, the fact that the discovery period closed before the court ruled on the discovery issue thus weighs *against* American Axle, not in its favor.[2] Conti's counsel also expressly agreed to depose other AAM employees first, thereby satisfying the second concern raised in *Thomas*. Finally, AAM's motion for a protective order never provided *any* substantive basis for its repeated claim that this deposition would pose a hardship on Dauch. In fact, given that other executives at AAM who work alongside

---

[2]This is another issue which the district court improperly failed to consider, and further demonstrates that it abused its discretion in precluding Conti from deposing Dauch.

Dauch on a daily basis were able to make time to appear, it seems more than reasonable to conclude that Dauch could have been deposed without unreasonable inconvenience.

Unlike the dissent, we are not inclined to credit Dauch's bald assertion that being deposed would present a substantial burden, especially when his deposition could provide information critical to Conti's claims.[3]  To allow a defendant to avoid his discovery obligations on such a thin basis frustrates the purpose of discovery, and runs counter to the Supreme Court's explicit instruction that discovery privileges should be "construed broadly." *Oppenheimer Fund*, 437 U.S. at 351 (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947) (observing that discovery was intended so that "civil trials in the federal courts no longer need be carried on in the dark" by allowing "the parties to obtain the fullest possible knowledge of the issues and facts before trial")).

Absent any substantive basis to support Dauch's hardship claim, and in light of Dauch's likely knowledge of information relevant to Conti's claims, we find that the denial of Conti's deposition request was an abuse of discretion. *See Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error.").  We therefore reverse the judgment of the district court as to this issue.

### III.  SUMMARY JUDGMENT STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*.  *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 307-08 (6th Cir. 2001).  Summary judgment

---

[3]Contrary to the dissent's suggestion, we analyze the prejudice element below in discussing how Dauch's deposition could provide information critical to particular claims raised by Conti.

is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

As the moving party, American Axle bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Conti's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If American Axle meets that burden, Conti must then present sufficient evidence from which a jury could reasonably find for her. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). This Court must determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In evaluating the evidence, the Court must draw all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Thus, in reviewing the district court's decision, we "must view the entire record in the light most favorable to" Conti. *Fieger v. U.S. Attorney Gen.*, 542 F.3d 1111, 1116 (6th Cir. 2008).

## IV.   CONTI'S ELCRA CLAIMS

Michigan's Elliot-Larsen Civil Rights Act prohibits discrimination "on the basis of sex with respect to a term, condition, or privilege of employment." M.C.L. 37.2202(1)(c). This provision includes "the entire spectrum of disparate treatment of men and women in employment . . . ." *Downey v. Charlevoix County Bd. of County Rd Comm'rs*, 576 N.W.2d 712, 715-16 (Mich. Ct. App. 1998).

Michigan courts have recognized that ELCRA claims generally are to be evaluated on summary disposition in the same manner as Title VII claims, and that both state and federal precedents are relevant. *See Harrison v. Olde Financial Corp.*, 572 N.W.2d 679, 681 (Mich. Ct. App. 1997). Like Title VII, an ELCRA discrimination claim may be established by direct or indirect evidence. *See Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 410 (Mich. Ct. App. 1997). Thus, in addition to being able to rely on direct proof of intentional discrimination, ELCRA plaintiffs also may rely on the indirect, burden-shifting approach sanctioned in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Meagher*, 565 N.W.2d at 410.

### *Direct Proof*

"The elements of a mixed motive case are (1) the plaintiff's membership in a protected class, (2) an adverse employment action, (3) the defendant was predisposed to discriminating against members of the plaintiff's protected class, and (4) the defendant actually acted on that predisposition in visiting the adverse employment action on the plaintiff." *Wilcoxon v. 3M*, 597 N.W.2d 250, 257 (Mich. Ct. App. 1999). Direct evidence of intentional discrimination is "evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor." *Downey*, 576 N.W.2d at 718; *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). On this approach, a plaintiff must offer "credible, direct evidence of discriminatory animus." *Terbovitz v. Fiscal Court of Adair County*, 825 F.2d 111, 114-15 (6th Cir. 1987). "[O]nce the plaintiff has met the initial burden of proving that the illegal conduct . . . was more likely than not a 'substantial' or 'motivating' factor in the defendant's decision, the defendant has the

- 15 -

opportunity to show by a preponderance of the evidence that it would have reached the same decision without consideration of the protected characteristic." *Harrison*, 572 N.W.2d at 683.

To establish a case of intentional discrimination, Conti points to four items she contends are direct evidence of discrimination: (1) Dauch's writings praising gender-biased management styles;[4] (2) Dauch's role as a decision-maker; (3) an alleged statement by Earhart in 2001 that Conti was not promoted to a Director position at that time because she "did not have a penis;" and (4) alleged statements from Conti's prior supervisor, Roy Langenbach, instructing her not to hire a woman who was overweight or a woman who was a mother. Conti also offers statistical evidence showing that AAM has never had a female executive director or vice president, and that only a small percentage of its executives, all at the lowest salary bands, are female.[5]

The district court declined to consider evidence from Dauch's "unsworn writings contained in a book intended for the general public as evidence in this matter of what occurred to Plaintiff while employed with Defendant." J.A. 2515. As to Conti's other evidence, the district court concluded that, even accepting these allegations as true, they failed to support a "direct" showing of discrimination. J.A. 2520. In entering summary judgment in favor of AAM, the district court concluded that, although such evidence shows that "gender may have played a roll [sic] in the overall

---

[4]In particular, Conti focuses on Dauch's statement in a published book that German and Japanese management styles "can teach us a lesson," while simultaneously acknowledging that women "[do] not get equal consideration or special deference in either." J.A. 1687-89.

[5]The dissent challenges Conti's statistical evidence as "subjective," and criticizes it for failing to "analyze any component of AAM's hiring process." Dissenting Op. at 6. These criticisms, however, are misplaced, at least at this stage, because we are obliged to interpret the evidence in the light most favorable to Conti and to make all inferences in her favor.

management and hiring decisions of Defendant," it does not "'require the conclusion' that Plaintiff's gender was a motivating factor in employment decisions specifically affecting her." J.A. 2520.

Contrary to the conclusion reached by the district court, we conclude that the record does not permit summary disposition at this time. To the extent that Conti's claims rely on the role that Dauch and his allegedly biased management style played in her stalled advancement, summary judgment at this point would be premature given that Conti has yet to depose Dauch. Without question, information that Conti obtains during that deposition may be relevant to both her direct and indirect evidence claims.

But even setting aside our conclusion regarding the deposition issue, the district court's grant of summary disposition was inappropriate. Conti testified that Earhart expressly stated that Conti was passed over for a promotion based on her sex. J.A. 2142. If Conti had relied on this statement as evidence of *Earhart's* discriminatory attitudes toward Conti, we may agree with the district court's conclusion that such sentiments cannot support Conti's claims because it is evident that Earhart played no role in any employment decisions affecting her, *see Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) ("Statements by nondecisionmakers . . . [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus." (citations omitted)), and because Earhart's sentiments cannot be imputed to Conti's superiors, *see Wilson v. Stroh Cos., Inc.*, 952 F.2d 942, 945-46 (6th Cir. 1992) (holding that racial animus by plant manager could not be imputed to upper-level manager who made decision to terminate absent proof of a connection). But Conti does not rely on this statement to show Earhart's animus, but rather to show his understanding of the motives of *other executives* who did make the decision not to promote Conti.

Taking Conti's claim as true, as we must at this stage, this statement speaks directly to Conti's claim that sex was a motivating factor in AAM's decision not to promote her. Although AAM challenges whether Earhart ever made such a statement, and if he did, whether that statement is credible, that issue is precisely the type of disputed issue of fact that precludes summary judgment. *See Harrison*, 572 N.W.2d at 681 n.5 ("The defendant's employees in question deny making the comments, which, in turn, calls into question plaintiff's credibility. When credibility is at issue, summary disposition rarely is appropriate."). The other direct evidence on which Conti relies is to the same effect. Taking all of this evidence together, we find it sufficient to survive summary judgment.

Although some of Conti's claims do not relate to adverse employment actions directly affecting her, such a narrow reading of the case law is improper. Michigan courts have held that a plaintiff proceeding on a direct evidence theory must point to allegations that "'require the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Sniecinski v. Blue Cross & Blue Shield*, 666 N.W.2d 186, 192 (Mich. 2003) (quoting *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). But that merely requires that the plaintiff show that "the defendant's discriminatory animus was more likely than not a 'substantial' or 'motivating' factor in the decision," or that defendant's "discriminatory animus was causally related to the adverse decision." *Id.* at 193 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244 (1989)). The "requires the conclusion" standard does not imply that every allegation and every piece of evidence pertain directly to the adverse actions taken against the plaintiff. A direct evidence claim may be supported by more generalized evidence, so long as the

evidence when taken as a whole requires the conclusion that the defendant's discriminatory animus was a motivating factor in the adverse employment action. *See Harrison*, 572 N.W.2d at 683 (citing *Kresnak v. City of Muskegon Heights*, 956 F. Supp. 1327, 1335 (W.D. Mich. 1997) (noting that negative statements and racial slurs are sufficient to establish a prima facie case and survive summary judgment even if those comments were not directed at or made about the plaintiff directly) (citing *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 380 (6th Cir. 1993), and *Talley v. Bravo Pitino Restaurant, Inc.*, 61 F.3d 1241, 1249 (6th Cir. 1995))). As this Court has noted in a similar context, "[d]iscriminatory statements may reflect a cumulative managerial attitude among the defendant-employer's managers that has influenced the decisionmaking process for a considerable time. Thus, management's consideration of an impermissible factor in one context may support the inference that the impermissible factor entered into the decisionmaking process in another context." *Ercegovich v. Goodyear Tire and Rubber Co.*, 154 F.3d 344, 356 (6th Cir. 1998).

Because Conti's allegations, when considered together and taken as true, raise a triable issue of fact as to whether her sex was a substantial motivating factor in the adverse actions taken against her, summary judgment is inappropriate.

### *Indirect Proof*

In the alternative, Conti offers indirect evidence to support her mixed-motive claims. As in the direct evidence context, a plaintiff relying on indirect evidence still must make a prima facie showing of discrimination. To make an indirect "prima facie" case, a plaintiff must demonstrate that she suffered an adverse employment action, and that she did so "under circumstances that give rise to an inference of unlawful discrimination." *Wilcoxon*, 597 N.W.2d at 257. The use of the term

"prima facie case" in this context, however, may be misleading inasmuch as this threshold showing "does not mean that the plaintiff produced sufficient evidence to allow the case to go to a jury, but rather that the plaintiff produced enough evidence to create a rebuttable presumption of . . . discrimination." *Meagher*, 565 N.W.2d at 410; *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 n.7 (1981) ("The phrase 'prima facie case' not only may denote the establishment of a legally mandatory, rebuttable presumption, but also may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue. *McDonnell Douglas* should have made it apparent that in the Title VII context we use 'prima facie case' in the former sense." (citation omitted)). In other words, a plaintiff's "prima facie" showing in this context "does not describe the plaintiff's burden of production, but merely establishes a rebuttable presumption." *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521 (Mich. 2001).

To survive summary judgment in this context, a plaintiff also must satisfy the additional burdens set out in *McDonnell Douglas*. *See Hazle*, 628 N.W.2d at 520-21. Under that familiar framework, "the court then examines whether the defendant has articulated a legitimate, nondiscriminatory reason for its action. If that articulation is made, the court next considers whether the plaintiff has proved by a preponderance of the evidence that the reason offered by the defendant was a mere pretext for discrimination." *Harrison*, 572 N.W.2d at 682 (internal citations omitted).

Conti attempts to makes her "prima facie" showing by pointing to the following alleged adverse employment actions: (1) unlike Earhart, she was not placed in salary band 15 when she was promoted to a co-Director position in 2003; (2) she was demoted in 2003; (3) she was not afforded the same training and advancement opportunities as male co-workers; and (4) she was paid less than

her immediate male predecessor, Pannucci, when she took over the New Model Launch department. *See* Conti Br. at 34.

Reading the record in the light most favorable to Conti, these claims certainly demonstrate adverse employment actions that give rise to an inference of unlawful discrimination. For instance, the record does show that AAM promoted Conti's male co-worker, Earhart, to a vacant director position two years before Conti.[6] The record also supports her claim that when she eventually was made a co-Director two years later, she was not elevated to a higher salary band as was Earhart when he was promoted. There also is no dispute that Conti was demoted back to an SEIT position in the summer of 2003, only a few months after her promotion. And the record also is clear that, in 2004 when Conti was promoted to head of the New Model Launch department, she was assigned the title of manager rather than director, a distinction which again precluded her from being eligible for higher executive bonuses. The record also is unequivocal that Conti did not receive the same salary as her immediate male predecessor upon her promotion. Each of these claims is sufficient to allege an adverse employment action. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998) (recognizing that a "tangible employment action" includes "a denial of a raise or a promotion"); *Jordan v. City of Cleveland*, 464 F.3d 584, 596 (6th Cir. 2006) ("[D]enial of money would more than

---

[6]Confusingly, the dissent argues that "Earhart's role as a Director prior to becoming co-Directors with Conti is not relevant to his later role as co-Director." Dissenting Op. at 9. But that argument misses the point. While not relevant "to his later role as co-Director," Earhart's promotion two years ahead of Conti certainly is relevant to determining whether AAM promoted a less-qualified male employee over Conti based on her sex. The dissent also ignores that, even when she finally was promoted to the same position as Earhart two years later, Conti was not promoted to the same salary band. Again, we must read this evidence in the light most favorable to Conti.

amply qualify as a materially adverse action to any reasonable employee for Title VII purposes."); *Nguyen v. City of Cleveland*, 229 F.3d 559, 565 (6th Cir. 2000) (accepting that the denial of the proper pay increase with the plaintiff's promotion constituted an adverse employment action). Accordingly, Conti's claims are sufficient to create a rebuttable presumption of unlawful discrimination.

Under *McDonnell Douglas*, the burden thus shifts to American Axle to demonstrate that it had legitimate, nondiscriminatory reasons for these employment decisions. If AAM makes such a showing, Conti assumes the burden of showing pretext. Reviewing the record, we conclude that AAM has provided significant, nondiscriminatory reasons for these employment actions, but that Conti has introduced sufficient evidence to raise a material question of fact as to whether these justifications are merely pretext for unlawful discrimination.

As to Conti's delayed promotion and eventual demotion, the company argues that Conti's management style was abrasive and ineffectual, that her subordinates often complained, and that several of her subordinates either left her section or the company entirely. In response, however, Conti points out that many of these employment reviews are from 1997, *see* J.A. 354, while a 2000 review, the year immediately prior to Earhart's promotion, indicates that Conti's work generally was "commendable" or "competent," J.A. 1649-51. Conti also points out that, if she was so incompetent, why was she promoted to a co-Director position in 2003, and then again promoted to a manager position in 2004. We cannot merely discount these positive performance reviews and Conti's other rebuttal evidence, as the district court seems to have done, but instead must read this evidence in the light most favorable to Conti. At a minimum, these conflicting accounts of Conti's performance

raise a triable issue of fact as to whether AAM's proffered justifications are pretextual, and thus summary judgment is inappropriate. *See Anderson*, 477 U.S. at 249 ("[T]he judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); *Hazle*, 628 N.W.2d at 522 n.10 (making clear that, "in response to a motion for summary disposition [in the indirect evidence context], the nonmoving party's obligation is only to show the existence of a 'genuine issue as to any material fact'" as to the pretext element).

AAM also argues that Conti was not as qualified as many of the male executives to which she seeks to compare herself. Conti rejects that assertion. In comparison to Earhart, Conti claims that she was just as qualified for the promotion. The fact that AAM eventually promoted her to the same position as Earhart, making them co-Directors of the same department, seems to support that contention. In regards to Pannucci, Conti acknowledges that Pannucci had an engineering degree and plant management experience, but disputes whether these are relevant considerations for the head of the New Model Launch department. Again, the record does not provide an answer to this disputed question, and thus summary disposition is improper. *Hazle*, 628 N.W.2d at 522 ("[F]or purposes of a motion for summary disposition or directed verdict, a plaintiff need only create a question of material fact upon which reasonable minds could differ regarding whether discrimination was a motivating factor in the employer's decision.").

### *Retaliation*

Conti also alleges that these adverse employment actions were taken in retaliation for her protected conduct in the *Van Zoest* case. In order to show causation in a retaliatory discrimination case, "plaintiff must show something more than merely a coincidence in time between protected

activity and adverse employment action." *West v. Gen. Motors Corp.*, 665 N.W.2d 468, 472 (Mich. 2003). "Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed." *Id.*

The district court granted summary judgment on this issue because it found that, other than the fact that Conti was demoted a few months after her protected activity, Conti failed to produce any evidence affirmatively showing that her demotion, or any other adverse employment action, was related to her decision to testify about discriminatory hiring practices in the *Van Zoest* case. As the district court framed the issue, AAM is entitled to summary judgment essentially because Conti failed to show that Shanti, her direct supervisor at the time, was aware of her protected conduct.

As discussed above, however, the record does suggest that Dauch likely was aware of Conti's protected activity and that he maintained a very hands-on management approach. Because Conti has not yet had the opportunity to depose Dauch on this matter, we conclude that it would be premature at this juncture to grant summary judgment as to her retaliation claim. We therefore vacate the judgment of the district court on this claim as well.

## V.   CONTI'S EQUAL PAY ACT CLAIM

The Equal Pay Act prohibits employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work. *See* 29 U.S.C. § 206(d)(1). Thus, to establish a prima facie case of wage discrimination, Conti must show that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'"

*Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)); *Balmer v. HCA*, 423 F.3d 606, 612 (6th Cir. 2005). "'Equal work' does not require that the jobs be identical, but only that there exist 'substantial equality of skill, effort, responsibility and working conditions.'" *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998) (quoting *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981)). Whether the work of two employees is substantially equal "must be resolved by an overall comparison of the work, not its individual segments." *Id.* An EPA plaintiff may meet her prima facie burden by demonstrating a wage differential between herself and her predecessor. *See Gandy v. Sullivan County, Tenn.*, 24 F.3d 861 (6th Cir. 1994) (presuming that there was "substantial similarity" between plaintiff and her immediate male predecessor's job).

If Conti carries her burden, "the burden shifts to the employer to show that the differential is justified under one of the Act's four exceptions." *Corning Glass*, 417 U.S. at 196; *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 826 (6th Cir. 2000). One of the Act's four exceptions is a "general catchall provision," *Corning Glass*, 417 U.S. at 196, which precludes liability where the employer can show that the different payment to employees of opposite sexes "is made pursuant to . . . a differential based on any other factor other than sex," 29 U.S.C. 206(d)(1)(iv). Consequently, AAM is not liable under the EPA if it is able to demonstrate that the alleged wage differential is predicated on a factor other than sex. *See Timmer v. Michigan Dept. of Commerce*, 104 F.3d 833, 843 (6th Cir. 1997).

In moving for summary judgment, AAM argued that, at least in most instances, Conti earned a *higher* annual salary than her male counterparts. In those instances where Conti earned less, AAM

argues that the difference in pay and/or title was based on factors other than her sex, pointing to the purportedly greater experience, education, and other qualifications of her male counterparts. In many respects, AAM's argument is well taken. For instance, the record shows that Conti did earn more money than most of her male counterparts when she was hired into AAM as an SEIT in 1997. And the record also shows that Conti earned more money than Earhart when the two were co-Directors of Indirect Material Purchasing for the first half of 2003. Although Conti alleges that Earhart was promoted to salary band 15 in that position, AAM responds that Earhart was demoted to band 13 when Conti was made a co-director. AAM also points out that Conti earned significantly more money as the manager of New Model Launch than Satish Raheja, the prior male employee who held that position less than a year before Conti.

Upon closer scrutiny, however, AAM's argument fails in one critical instance. When Conti was promoted to manager of the New Model Launch department, she received a significantly lower salary than her immediate male predecessor, Pannucci. If the positions held by Conti and Pannucci were "substantially similar," this difference alone is sufficient to establish a *prima facie* case under the EPA. *See Buntin*, 134 F.3d at 799 ("The plaintiff may meet her prima facie burden by demonstrating a wage differential between herself and her predecessor."). At that point, the burden would fall on AAM to "prove" its claim that the difference in pay and title was based on legitimate factors other than sex. *Id.*

Primarily, AAM contends that Conti received less pay than Pannucci because, although she was promoted ostensibly to the position left vacant by Pannucci, she was given the title and responsibilities of a manager rather than a director. According to AAM, the difference in title

reflects a critical distinction in the duties performed by Pannucci and Conti. But this Court consistently has recognized that the plaintiff is not required to demonstrate that the duties performed are "identical," but only "that there exist 'substantial equality of skill, effort, responsibility and working conditions.'" *Buntin*, 134 F.3d at 799 (quoting *Odomes*, 653 F.2d at 250). "Whether the work of two employees is substantially equal 'must be resolved by an overall comparison of the work, not its individual segments.'" *Id.* (quoting *Odomes*, 653 F.3d at 250).

Applying that standard, we find that Conti has raised a material issue as to whether she performed substantially equal work for less pay. Conti testified that she was required to perform all of the duties previously assigned to her predecessor, as well as some additional responsibilities.[7] Nevertheless, Conti received significantly less pay, and again was not eligible for the same executive bonuses. Although AAM argues that there is a significant difference in the responsibilities assigned to Pannucci and Conti in their respective positions, the only evidence to that effect comes from the

---

[7]As the dissent points out, in support of her claim that she assumed additional responsibilities over and above those performed by Pannucci, Conti "highlights that she handled Sarbanes-Oxley audits and IT system administration—duties Pannucci did not have—without the benefit of Pannucci's two direct reports." Dissenting Op. at 12. The dissent criticizes this claim on the ground that "Conti gives us no reason why audits and IT system administration should warrant a different pay scale." *Id.* This criticism entirely misunderstands Conti's argument. Conti obviously is not arguing that her work performing Sarbanes-Oxley audits and IT administration warrants a *different pay scale*, but rather that these additional tasks support her overarching claim that she performed "substantially similar" duties as Pannucci, and thus shows that she deserved to be paid at *the same pay scale*. It is revealing that the dissent refuses to accept Conti's "bald allegations" that she performed these additional tasks—despite the fact that nothing in the record is to the contrary, and notwithstanding our obligation to make all inferences in Conti's favor—and yet, at the same time, is more than willing to accept Dauch's completely unsubstantiated claim that being deposed would impose a substantial hardship on him, when we owe no such deference to Dauch's claims.

self-serving testimony offered by Pannucci himself.  AAM offers no other evidence to rebut Conti's

claim that she performed "substantially" the same functions as Pannucci.

Because the court was required to construe the record in the light most favorable to Conti at

this stage, it was improper for the district court to credit Pannucci's testimony over Conti's without

any other supporting evidence.[8]  In light of the competing claims as to this particular issue, we find

that it was improper to grant summary judgment as to Conti's retaliation claim.  *See Timmer*, 104

F.3d at 844 ("[A]s with all affirmative defenses under the Act, the employer must prove that 'sex

provides *no part* of the basis for the wage differential [in order to prevail on summary judgment].'"

(quoting *Brennan v. Owensboro-Daviess County Hosp.*, 523 F.2d 1013, 1031 (6th Cir. 1975)

(emphasis in *Timmer*)).  In our view, Conti has raised a prima facie case under the EPA with respect

to her claim of unequal pay in this context, and the disputed issues of fact regarding the difference

in responsibilities between her and Pannucci cannot be resolved on summary judgment.

### VI.   CONTI'S DISPUTE WITH SOMMERS SCHWARTZ

Conti also challenges the district court's prior decision to permit her former counsel in this

action, Sommers Schwartz PC, to withdraw and yet still file a lien against any damages she may

---

[8]In concluding that Conti fails to make her *prima facie* case, the dissent relies heavily on Pannucci's testimony that Conti did not perform the same tasks as he did as Director of New Model Launch.  *See* Dissenting Op. at 12-13.  Conti, however, directly challenges that testimony, and in fact identifies a number of additional tasks that she was required to perform.  Conti also points out that, unlike Pannucci, she did not have the benefit of two direct reports in running the New Model Launch department.  While we agree that Pannucci's testimony is relevant to Conti's claim, and that a jury eventually could find it persuasive, it would be improper at this stage to credit Pannucci's testimony over Conti's.  Again, as the non-moving party, Conti is entitled to have us read the evidence in the light most favorable to her position.

recover in this action. In 2004, Conti retained the Sommers Schwartz firm to pursue her claims against AAM. Attorney Joseph Golden ("Golden") served as lead counsel on Conti's case. After acting as lead counsel for over 2 years, Golden resigned and left the firm effective February 14, 2007. Shortly thereafter, on April 4, 2007, Sommers Schwartz advised Conti via e-mail that it intended to withdraw as counsel, noting that the "sticking point" in continuing the relationship was "the question of [Conti's] responsibility for ongoing anticipated file costs." J.A. 1031. Conti responded via letter on April 5, 2007 that she did not consent or agree to the firm's proposal to withdraw as counsel, and advising the firm that she intended to invoke her rights under the Retainer Agreement should the firm seek to withdraw.[9] J.A. 984-85.

Over Conti's objection, Sommers Schwartz filed a motion to withdraw alleging a complete "breakdown" in the attorney-client relationship. J.A. 1066-70. Although Sommers Schwartz's motion advised the court that it had attempted to contact defense counsel, it did not inform the court that Conti had objected to its proposal to withdraw and it did not mention Conti's letter of April 5, 2007. And although Sommers Schwartz's motion advised the court that Golden continued to serve

---

[9]In the Retainer Agreement entered into between Conti and Sommers Schwartz, J.A. 1073-76, the parties agreed that the "Firm shall retain a lien on any and all property provided to the Firm by Client to pursue his/her claims, including all personal papers, investigations paid for by Client and documents. . . . This lien shall remain in effect until all fees, expenses and court costs owing to the Firm are paid in full." J.A. 1074. However, the Retainer Agreement also provided that the "Firm shall not substitute Client representation and/or their roles without Client consent. If representation and/or roles change without Client consent, this Agreement becomes null and void, and the Client will not [be] liable for any of the Firm's expenses, court costs and/or fees. All liens will be cancelled and recorded by the Firm and all Client property including investigations and studies will be returned to the Client." J.A. 1075.

as counsel for Conti, Golden filed a motion to withdraw as counsel on April 24, 2007. Conti did not file a response to the motion.

On April 30, 2007, after the expiration of the time period for filing a response and after Golden filed his motion to withdraw, the court entered a "stipulated" order permitting Sommers Schwartz to withdraw as counsel. Although so titled, Conti plainly had not "stipulated" to the order. A week later, on May 8, 2007, Golden, despite having already filed his own motion to withdraw, filed a belated motion on Conti's behalf opposing the court's order. J.A. 968-78.

After Conti obtained replacement counsel, Sommers Schwartz asserted a lien for its costs and attorney fees against any damages Conti may recover in this action.[10] On May 31, 2007, Conti's new counsel filed a motion for declaratory judgment arguing that Sommers Schwartz was precluded under Paragraph 13 of the Retainer Agreement from asserting a lien for its outstanding costs because it withdrew from the case without Conti's consent. Sommers Schwartz's response argued that Conti's "failure to file an objection to Sommers Schwartz's withdrawal motion represents her consent (or at a minimum her abandonment of any objection) to the relief ordered by this Court." J.A. 1048. Sommers Schwartz also argued that Paragraph 13 was void as a matter of public policy.

On June 25, 2007, the magistrate judge held a hearing on the issue. At the hearing, the magistrate judge expressly acknowledged that the "stipulated" order was entered in error "based on what [the court] saw as an unobjected to order." J.A. 2593. Despite acknowledging this error, the magistrate judge nevertheless entered a written order approving the lien as to all costs incurred up

---

[10]In its papers to this Court, Sommers Schwartz claims only that it is entitled to costs, expressly disavowing its claim regarding attorney fees.

until Sommers Schwartz withdrew as counsel. J.A. 1099. Critically, however, the order expressly set aside the issue of attorney fees for resolution at a later date. J.A. 1099. The order also rejected Conti's objections under Paragraph 13, finding that that provision "is void as a matter of Michigan public policy." J.A. 1103.

On Conti's appeal, the district court approved the magistrate judge's order, agreeing with Sommers Schwartz that Paragraph 13 of the Retainer Agreement did not apply because Conti had failed to object to the motion to withdraw. Critical to that ruling was the court's determination that Conti "was represented by counsel when Sommers Schwartz filed its motion to withdraw." J.A. 1263. Significantly, however, the court did not address any issues related to the magistrate judge's determination that Paragraph 13 is void as a matter of public policy. Rather, the court determined only that, because Conti failed to file timely objections to Sommers Schwartz's motion to withdraw, Paragraph 13 of the Retainer Agreement did not apply because Sommers Schwartz did not withdraw "without the consent" of Conti. J.A. 1263.

### *Jurisdictional Considerations*

Prior to oral argument, this Court requested that the parties submit supplemental briefs regarding this dispute addressing "both the finality of the magistrate judge's order and the timeliness of the notice of appeal," referring the parties to our decision in *Gnesys, Inc. v. Greene*, 437 F.3d 482 (6th Cir. 2005).[11] The question underlying that request was whether Conti's appeal from the district

---

[11]Although our request was directed generally to the counsel for all parties, the only parties with an actual interest in this dispute are Conti and Sommers Schwartz; American Axle has no stake in the outcome of this dispute. Accordingly, we strike the brief submitted by American Axle for lack of standing.

court's July 27, 2007 order is untimely because, although it was filed within 30 days of the district court's order granting AAM summary judgment, it was filed several months after the court entered its order on this distinct issue. After consideration, we conclude that we have jurisdiction to consider Conti's appeal from the district court's order denying her motion for declaratory judgment.

Under 28 U.S.C. § 1291, this Court has jurisdiction to consider appeals "from all final decisions of the district courts of the United States." In determining whether a decision is "final" for purposes of § 1291, the Supreme Court has instructed that we consider whether the decision "ends the litigation on the merits and leaves the court nothing to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). "When an action presents more than one claim for relief . . . the court *may* direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b) (emphasis added). "Otherwise, any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties *does not end the action as to any of the claims* or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id.* (emphasis added).

In this case, the magistrate judge's June 27, 2007 order denying Conti's motion for declaratory judgment did not finally resolve the issue of Sommers Schwartz's entitlement to attorney fees. In fact, that order expressly "stayed" the issue of fees "in order to permit Ms. Conti to obtain new counsel and present any affidavit regarding the effect of [Sommers Schwartz's] lien on the representation." J.A. 1099. Because a magistrate judge's order is not subject to appeal under § 1291, Conti appropriately appealed that order to the district court. *See United States v. Walters*, 638

F.2d 947, 949-50 (6th Cir. 1981) ("Direct appeals from the magistrate judge's findings are correctly denied, because only final orders of the district court are appealable pursuant to 29 U.S.C. [§] 1291.").

On July 27, 2007, the district court affirmed the magistrate judge's resolution of the matter, also setting aside resolution of the dispute over attorney's fees. J.A. 1263 ("Magistrate Judge Morgan is not in error in her decision to consider the issue of attorney fees at a later date."). Because that order did not resolve all issues relating to that dispute, it is not a "final" order subject to appeal under § 1291.

Our prior decision in *Gnesys* is not to the contrary. In that case, we held that a notice of appeal was untimely because it was filed almost a year after the district court entered an order finding defendant in contempt and awarding plaintiff damages, even though it was filed within 30 days of the court's entry of an order resolving disputed attorney fees that related to the previously entered damages award. *Gnesys*, 437 F.3d at 485. Relying on *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988), we concluded that the claim for fees was "not part of the merits of the action," and thus held that the dispute over fees did not preclude the order awarding of damages from effectively rendering a final decision. *Gnesys*, 437 F.3d at 486-87.

In this case, however, the facts are almost completely reversed. Rather than resolving the merits first and the fee dispute later, the court resolved Conti's dispute with Sommers Schwartz as to costs first, *prior to* granting American Axle's summary judgment motion. Because the district court had yet to enter an order resolving the merits of the action, the holding of *Gnesys* is inapposite. While *Gnesys* instructs that the dispute between Conti and Sommers Schwartz regarding costs and

fees is separate from the merits of the underlying action, the fact that such an outstanding dispute does not toll the time for filing an appeal from an order that fully resolves the merits of the action simply does not speak to whether the resolution of that dispute constitutes a separate final order for purposes of § 1291.

Nor was the district court's July 27, 2007 order subject to appeal under the collateral order doctrine. Although 28 U.S.C. § 1291 vests the Courts of Appeals with jurisdiction over appeals only from "final decisions" of the district courts, "a decision 'final' within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case." *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152 (1964). A decision also is appealable if it falls within "that small class [of orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949). That "small class" of decisions includes orders granting or denying a claimed right that "cannot be effectively vindicated after the trial has occurred." *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985). The requirements for bringing an appeal under *Cohen*'s collateral order doctrine "have been distilled down to three conditions: that an order '[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.'" *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)).

The district court's order thus was not subject to collateral appeal because it did not "conclusively determine" the dispute in question inasmuch as it specifically left the issue of attorney fees unresolved. Moreover, as *Gnesys* demonstrates, disputes as to costs and fees, although collateral to the underlying dispute, can still be "effectively vindicated after the trial has occurred."

### *Merits Analysis*

This Court reviews the district court's decision to permit an attorney to withdraw for an abuse of discretion. *United States v. Chambers*, 441 F.3d 438, 446 (6th Cir. 2006). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *Tucker v. City of Fairfield*, 398 F.3d 457, 461 (6th Cir. 2005). This abuse of discretion standard applies even where a motion seeking substitute counsel is untimely. *See United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999). This Court reviews the district court's conclusions of law *de novo*. *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004).

Conti opposed the lien asserted by Sommers Schwartz based on Paragraph 13 of the Retainer Agreement. Rejecting that argument, the district court concluded that that provision did not apply because Conti failed to object to Sommers Schwartz's motion to withdraw. Critical to that ruling was the court's finding that Conti was represented by counsel when Sommers Schwartz moved to withdraw. After reviewing the record, we now conclude that the district court's conclusion was an abuse of discretion.

In permitting the Sommers Schwartz firm to withdraw as counsel, the district court and magistrate judge made several procedural errors and findings that are contrary to the record. Perhaps most notably, the magistrate judge entered a "stipulated" order granting the firm's motion to

withdraw despite the fact that Conti had not acknowledged in any way her consent to the motion. From the record, it is apparent that Conti bears no responsibility for this oversight. Despite receiving a letter from Conti unequivocally opposing its threat to withdraw as her counsel, Sommers Schwartz nevertheless failed to inform the court of Conti's position, failed to attach her letter, and submitted a proposed "stipulated" order. As a result, the magistrate judge entered that order completely unaware of Conti's position, acknowledging as much at the hearing on this issue.

Although this mistake was brought to the district court's attention, the district court nevertheless affirmed the magistrate judge's order on the grounds that Conti failed to timely oppose the motion to withdraw. Apparently, the court concluded that Conti was not prejudiced by this oversight because she was represented by counsel at the time and therefore remained free to oppose Sommers Schwartz's motion and correct the omission. But we have serious doubts about that conclusion. Although Golden was acting as lead counsel on Conti's case, he was her attorney only by virtue of the retainer agreement she signed with Sommers Schwartz, which Sommers Schwartz's motion effectively was seeking to terminate. Moreover, Golden also submitted his own motion to withdraw *prior to* the magistrate judge entering its order granting Sommers Schwartz's motion.

Because the district court overlooked these errors, we find its decision to be an abuse of discretion. Accordingly, we vacate that judgment and remand to the district court for further consideration of the merits of Conti's claims under Paragraph 13 of the Retainer Agreement.

**VII.**

For the reasons stated herein, we hereby **REVERSE** the judgment of the district court regarding Conti's request to depose CEO Dauch, **VACATE** on all counts the district court's decision

to grant summary judgment in favor of American Axle, **VACATE** the district court's judgment

denying Conti's motion for declaratory judgment regarding her dispute with Sommers Schwartz, and

**REMAND** for further consideration in light of this opinion.

**COOK, Circuit Judge, concurring in part and dissenting in part.** Although I agree with much of the majority's opinion, I respectfully dissent from its conclusion that the district court: (1) improperly denied Conti the opportunity to depose AAM CEO Richard Dauch and (2) erred in granting summary judgment for AAM on Conti's gender-discrimination claims.

I.

As the majority acknowledges, a district court holds broad discretion over discovery decisions, and "[a]n order denying further discovery will be grounds for reversal only if it was an abuse of discretion resulting in substantial prejudice." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). Because I believe that the district court acted well within its discretion in denying Conti an opportunity to depose Dauch, I would affirm the court's discovery order.

The record fails to corroborate an argument that Dauch played a significant decisionmaking role either in Conti's alleged 2003 demotion or the 2004 transfer to the managerial position in the New Model Launch division. Conti contends that defense counsel questioned her at length about Dauch, asking "scores of questions" over forty-eight pages of her deposition. But Conti overstates the scope and value of these questions. Defense counsel merely elicited that Dauch met and hired Conti in January 1997 and that Conti's late father had a professional relationship with Dauch. Conti does mention a meeting with Dauch during her first year at AAM, which she initiated when AAM required her to switch managerial positions, but Conti explicitly disavows that employment transfer as the basis for her current lawsuit. Neither Conti's briefing nor the majority's analysis attach Conti's meeting with Dauch to the adverse employment actions that prompt her current litigation.

The majority concedes that "the record supports AAM's claim that Conti never reported directly to Dauch," but maintains that the record fails to support a "broader suggestion that Dauch has not been involved in decisions relating to Conti's employment." Maj. Op. at 7. Specifically, the majority points out that Conti's demotion occurred after she informed AAM's in-house counsel that one of her superiors, Roy Langenbach, instructed her not to hire two female applicants who Conti judged to be "very capable candidates" because "one was a mother [and another] one was overweight." Although the majority claims that "the record suggests that Dauch was aware of this information," the only record evidence the majority points to is Dauch's acknowledgment—in answering Conti's interrogatories—that he "retained trial counsel reports to AAM staff counsel [and that] AAM staff counsel [sent him] periodic updates on litigation matters." But in the same set of responses, Dauch also stated that he did not read any witness deposition transcripts related to the case and that he had no knowledge through any other source as to what prior witnesses had said on the record. Unlike the majority, I would not hold that from these brief comments, "it seems to follow that [Dauch] would have been aware of Conti's decision to testify against the company's interests." Maj. Op. at 8.

The majority also holds that "contrary to AAM's portrayal of Dauch as an aloof, hands-off CEO, significant record evidence attests to Dauch's personal involvement in and control over all aspects of his company." Maj. Op. at 8. In support, the majority points to a business article that characterized Dauch as "run[ning] his empire like a front-line general, relying on a mixture of fear and respect to craft an unlikely success story out of a business the skeptics long ago were ready to write off." But the deposition testimony that the majority suggests "confirms" that description is

insubstantial. Even though Earhart alluded to some trepidation in writing a performance review about Conti due to Dauch's relationship with Conti's father, he also conceded that he didn't know whether Dauch would ever see the performance review in the normal course of business. And to the extent that Conti cites record evidence suggesting that Dauch defines the company's goals and objectives, determines bonus structure, and approves final promotion decisions, these actions represent typical CEO responsibilities and have no real bearing on decisions about Conti.

Although the majority comments that the record evidence, taken cumulatively, "casts serious doubt on the notion that Dauch was not aware of and played *no* role in any decision relevant to this action," Maj. Op. at 9, it bears repeating that our review is guided by a different metric. The question before us is not simply whether further discovery might provide a more thorough record; our analysis asks whether the district court abused its discretion to the point of causing substantial prejudice. *See Bush*, 161 F.3d at 367.

The majority's analysis virtually ignores the prejudice aspect of not deposing Dauch, much less the "substantial" prejudice required to reverse an order denying discovery. *See id.* at 367. In his answers to Conti's interrogatories, Dauch emphasized that the decision to demote Conti arose "without [his] involvement," and in his sworn affidavit, Dauch testified that he had "no personal knowledge of any alleged gender discrimination against Ms. Conti," that he had "never been Ms. Conti's direct or indirect supervisor," that he had "no independent or unique knowledge of employment decisions made with respect to Ms. Conti's employment with AAM," and that deposing him would be "unduly burdensome, harassing, and annoying because [he would] be distracted from [his] duties and responsibilities." *See Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 483 (10th Cir.

1995) (accepting the affidavit of IBM's Chairman as support for his lack of direct knowledge of the facts in dispute). The district court acted well within its "broad discretion" when it denied a deposition for a CEO who "had no knowledge as to facts pertinent to [Conti's] action." *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989). I would affirm the district court's discovery decision.

## II.

Reviewing de novo, I would also affirm the district court's grant of summary judgment for AAM on Conti's gender-discrimination claims. *See Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008) (applying de-novo review).

## A.

The majority claims that Conti provided sufficient evidence—both direct and circumstantial—to support her ELCRA gender-discrimination claims. First, Conti argues that the record contains direct evidence of AAM's gender discrimination. Namely, that (1) Dauch authored a book in which he expressed admiration for Japanese and German cultures, where, "[i]f you are a woman . . . you will not get equal consideration;" (2) co-Director Larry Earhart allegedly told her that she could not be promoted because she didn't "have a penis;" (3) one of Conti's superiors, Roy Langenbach, allegedly instructed her not to hire overweight women or mothers; and (4) statistical evidence illustrates that AAM has yet to hire a female Executive Director, Plant Manager, or Vice President, and that only a small percentage of AAM's lower-level executives are female.

But these claims do not constitute evidence that "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-*

*Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). As discussed above, Conti does not point to evidence suggesting that Dauch acted as a decision-maker with respect to her career. Moreover, the relevant passages in Dauch's *Passion for Manufacturing* merely describe the "geography, demographics, and cultures of Germany and Japan," and even label the enforced homogeny as "intolerance." These statements bear little relevance to Conti's situation in specific and fail to substantiate discriminatory management practices. As for Earhart's alleged comment that Conti did not receive a 2001 promotion because she "did not have a penis," the record citation provided by both Conti and the majority contains no support for (or even reference to) this statement. Langenbach's comment about overweight women or mothers likewise does not rise to the level of direct discrimination because it does not require the conclusion that gender discrimination "was at least a motivating factor." *See Jacklyn*, 176 F.3d at 926; *Cushman-Lagerstrom v. Citizens Ins. Co. of Am.*, 72 F. App'x 322, 331–32 (6th Cir. 2003) (affirming summary judgment where "disparaging remarks" about "female employees who were overweight" did not constitute direct evidence of gender discrimination). Moreover, Langenbach's comments cannot constitute direct evidence because Conti fails to argue Langenbach's involvement in the employment decisions she challenges. *See Cushman-Lagerstrom*, 72 F. App'x at 332 (affirming summary judgment on a gender-discrimination claim where alleged comments did not come from a "primary decision-maker" in the plaintiff's termination). Finally, Conti's statistical evidence is inapposite. Although she argues that AAM never hired female as a top-ranking executive, and that only a small percentage of low-ranking executives are female, her explanation of what constitutes a "top-ranking" executive is entirely subjective—AAM hired Conti herself directly into executive ranks—and the statistical evidence does

not analyze any component of AAM's hiring process. The statistical evidence is thus unreliable as direct proof of gender discrimination. *See id.* at 331 (rejecting statistical evidence as unpersuasive where the factors analyzed proved unhelpful). Conti cannot demonstrate that the record supplies direct evidence that AAM discriminates on the basis of gender.

Conti similarly fails to support her claim via circumstantial evidence. As the majority acknowledges, when considering circumstantial evidence of discrimination, this court employs the familiar burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Conti bears the initial burden of establishing a prima facie case of discrimination. If she succeeds in doing so, the burden shifts to AAM to articulate a legitimate, nondiscriminatory reason for its actions. Finally, should AAM satisfy its burden, the burden returns to Conti to prove by a preponderance of the evidence that the legitimate reasons offered were only a pretext for discrimination. *Id.* at 802; *DiCarlo v. Potter*, 358 F.3d 408, 414–15 (6th Cir. 2004).

To establish a prima facie case of gender discrimination, Conti must demonstrate that she is: (1) a member of the protected class; (2) subject to an adverse employment action; (3) qualified for the job; and (4) treated differently than similarly situated male employees for the same or similar conduct. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004). Although Conti contends that AAM subjected her to a variety of adverse employment actions—failing to promote her, demoting her in June 2003, paying her an incommensurate salary, and failing to train her—she waived all but her failure-to-promote claim by failing to argue them in the district court. In fact, the district court only addressed Conti's ELCRA claims as failure-to-promote and retaliation claims. *See St. Marys Foundry, Inc. v. Employers Ins. of Wausau*, 332 F.3d 989, 996 (6th Cir. 2003) (noting

that this court exercises "discretion to rule on an issue not decided below only in exceptional cases") (citation and internal quotation marks omitted).

Conti's failure-to-promote claim fails on the first prong of the *McDonnell Douglas* analysis, largely for the reasons set forth in the district court's opinion. Specifically, Conti's allegations that AAM neglected to promote her to Vice President or Director positions in the Procurement and Materials Departments cannot support a prima facie case of gender discrimination because she cannot demonstrate that AAM treated her differently than similarly situated male employees. *See Humenny*, 390 F.3d at 906 ("To show that she was treated differently than similarly situated males for the same or similar conduct, Appellant must show that 'all relevant aspects' of her employment situation are 'nearly identical' to those of the alleged similarly situated male employees.").

To be "similarly situated," the male employees with whom Conti compares herself "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* at 906 (internal citation and quotation marks omitted). But, as the district court rightly noted, Conti does not have a similar level of education or professional experience when compared to those who held Vice President or Director positions in her respective departments. Unlike others named to higher executive positions, Conti did not have graduate-level degrees in engineering or other technical fields (she holds an undergraduate degree in communication and advertising and an MBA). Although the majority joins Conti in disputing the relevance of these considerations for the VP of Procurement position, the fact that the two men who held the position during the period in question, Abdallah Shanti and Alberto Satine, both had

advanced education in specialized engineering fields, corroborates the relevance of those professional qualifications for the position. I would conclude that Conti failed to set forth a prima facie case of ELCRA gender discrimination because she does not prove that AAM treated similarly situated male employees differently.

B.

Conti next alleges that her June 2003 transfer to the position of SEIT-New Model Launch in the Materials Department constituted retaliation because it occurred shortly after she told outside counsel in an unrelated discrimination case that Langenbach told her not to hire women who were overweight or mothers. The meeting with outside counsel occurred on April 11, 2003. To support a prima facie retaliation claim, Conti must demonstrate that: (1) she engaged in protected activity; (2) AAM knew of the protected activity; (3) AAM took an adverse action against her; and (4) a causal connection exists between the protected activity and the adverse action. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008).

Without discussing or arguing against the district court's conclusion that Conti failed to demonstrate that Shanti, her direct supervisor at the time, knew of her protected conduct, the majority relies largely on the necessity of deposing Dauch to vacate the district court's decision on Conti's retaliation claim. As set forth above, I disagree with the majority's position on the discovery order; and regardless, the district court properly disposed of Conti's retaliation claim.

In support of her claim, Conti points to: (1) the fact that Earhart retained his Director position for nearly two years despite problems with his performance; and (2) the close temporal relationship

between her April 11, 2003 meeting with outside counsel and her June 9, 2003 transfer. But, as the district court concluded, these arguments cannot sustain Conti's retaliation claim.

Earhart's role as a Director prior to becoming co-Directors with Conti is not relevant to his later role as co-Director. And once the two became co-Directors, Shanti transferred both on the same day. In fact, AAM transferred Earhart to a non-executive position (without eligibility for bonuses), while AAM placed Conti in a different executive-level position.

Furthermore, without more, temporal proximity "does not demonstrate a causal connection between the protected activity and any adverse employment action." *West v. Gen. Motors Corp.*, 469 Mich. 177, 186 (2003); *see Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008) ("[T]emporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence.") (citation and internal quotation marks omitted). This court previously held that two months is not necessarily a sufficiently close temporal connection. *See Arendale*, 519 F.3d at 606 (rejecting the plaintiff's claim that a two-month proximity between an EEOC charge and an alleged adverse employment action constituted—without more—sufficient evidence of causation); *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (deeming "two to five months" to be a "loose temporal proximity . . . insufficient to create a triable issue [on causation]"). I would affirm the district court's rejection of Conti's retaliation claim on summary judgment.

C.

Next, Conti alleges that she is able to support a prima facie claim under the Equal Pay Act because she received a lower salary than her immediate male predecessor after AAM promoted her to the position of Manager of the New Model Launch department. Specifically, when she took on

the New-Model-Launch position, she received a $117,000 annual salary, while Mike Pannucci received $171,000 before vacating his role as Director of the New Model Launch department.

The EPA prohibits employers from paying two employees who perform equal work at unequal rates of pay on the basis of gender. 29 U.S.C. § 206(d)(1). As the majority notes, establishing a prima facie EPA claim requires Conti to demonstrate that AAM pays male employees at a higher rate "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). Notably, this court assesses whether a job is "substantially equal" for EPA purposes on a case-by-case basis, and does not require that jobs be identical for a plaintiff to make out an EPA claim. *Beck-Wilson v. Principi*, 441 F.3d 353, 359–60 (6th Cir. 2006). And unlike Conti's Title VII claims, the EPA does not require a plaintiff to show discriminatory intent. *Id.* at 360. If Conti is able to set forth a prima facie case, AAM may still justify the wage difference under any of four affirmative defenses: (1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality of production; or (4) any other factor other than gender. *Id.* at 360 (citing *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998)). I conclude that the district court properly rejected Conti's EPA claim.

Conti fails to make out a prima facie claim because she compares her job with other jobs that are not "substantially equal" for EPA purposes. Relying on *Buntin*, the majority holds that Conti met her prima facie burden "by demonstrating a wage differential between herself and her predecessor" after she became Manager of the New Model Launch department. 134 F.3d at 799. But the majority reads *Buntin* out of context. The *Buntin* court held that a wage differential is sufficient where a

plaintiff *also* demonstrates that "substantial similarity" exists between the compared jobs. *See id.* (citing to a case requiring "substantial similarity" between the jobs held by the plaintiff and her male predecessor). In other words, *Buntin* merely affirms the requirement of substantial similarity; the majority incorrectly suggests that a wage differential—without more—suffices to support a prima facie EPA claim.

Conti argues that as the Manager of the New Model Launch department, she "performed the same work Pannucci performed or more and with fewer resources." Appellant's Br. at 47. In support, Conti highlights that she handled Sarbanes-Oxley audits and IT system administration—duties Pannucci did not have—without the benefit of Pannucci's two direct reports. But Conti gives us no reason why audits and IT system administration should warrant a different pay scale, and viewing the facts in Conti's favor does not require us to credit "bald assertions" or legal conclusions. *Anspach ex rel. Anspach v. City of Philadelphia*, 503 F.3d 256, 260 (3d Cir. 2007); *see also Burch v. City of Nacogdoches*, 174 F.3d 615, 621 n.11 (5th Cir. 1999) ("Construing the facts in the light most favorable to Burch does not require us to credit otherwise unsupported assertions.").

Moreover, as the district court pointed out in rejecting Conti's EPA claim, Conti "was paid more in the New Model Launch position than Satish Raheja, who held the position [as a Manager] for more than eight years before she did, and whose tenure in the position ended less than a year before [Conti] took it over." Furthermore, Pannucci had an engineering background and over forty years of experience in the industry, and when he transferred to the role as Director of New Model Launch, AAM merely preserved his previous salary. And although Conti concedes that Pannucci added responsibilities to Raheja's job, which accounted for the adjusted pay and different role, she

fails to note that Pannucci also deemed Conti incapable of fulfilling the job responsibilities he took on when he acted as the Director of New Model Launch, saying:

> She didn't have the knowledge base or skill sets to ask the right questions, to look at [mechanical] processes and be able to tell if they were functioning properly, if they were doing the right job, if—I mean, it was just based on product and process knowledge. She was—she was good at what the job was originally before I came into it, it was tracking more or less the trail, the paperwork trail, was this—was the billing material done? Was the purchase orders put in place? You know, those kinds of things. But to look beyond that, to look at the tooling, to look at the equipment, to look at the fixtures, to look at the design and question what this was going to mean to the plant, what it was going to mean to the tooling, what it was going to mean to the equipment, what it was going to mean to the financial bottom line. She did not comprehend and she couldn't ask those questions.

I would conclude that Conti fails to demonstrate her prima facie case because she cannot prove that she shouldered the same responsibilities as Manager as did Pannucci as Director.

### III.

I respectfully dissent from the majority's decision to reverse the district court on Conti's discovery claim and summary judgment claim.