**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0191n.06

**No. 07-2231**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

DAVID MARSICO,

      **Plaintiff-Appellant,**

v.

SEARS HOLDING CORPORATION, formerly
known as Kmart Holding Corporation,

      **Defendant-Appellee.**

                                            /

**FILED**
**Mar 25, 2010**
LEONARD GREEN, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

OPINION

BEFORE:     **COLE, CLAY, and KETHLEDGE, Circuit Judges.**

     **CLAY, Circuit Judge.** Plaintiff David Marsico appeals the district court's grant of summary judgment in favor of Defendant Sears Holding Corporation, formerly known as Kmart Holding Corporation, on his claims of discrimination, in violation of the Age Discrimination Employment Act, 29 U.S.C. §§ 622 *et seq.*, and the Michigan Elliott-Larsen Civil Rights Act, M.C.L. §§ 37.2101 *et seq.* For the reasons that follow, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings in accordance with this opinion.

## I. STATEMENT OF FACTS

### A.    Factual Background

    David Marsico, who was born in 1949, was hired by Kmart Corporation in 1972. Marsico began his career as a management trainee and by 2001, he was Senior Vice President of Sales and

Marketing. In January 2002, Kmart filed for Chapter 11 Bankruptcy. In March 2002, Julian Day (born in 1952) was appointed to serve as Kmart's president. Marsico was promoted to Division President, Eastern Division for Kmart in May 2002, making Plaintiff responsible for 900 stores in the Eastern half of the United States.

Eighteen months later, the division president position was eliminated, and in February 2003, Plaintiff assumed the position of Senior Vice President of Store Operations (the "SVP" position). In this position, Plaintiff received an annual salary of $385,000 and was one of the four highest compensated individuals employed by Kmart. Plaintiff continued reporting to Day while in the SVP position.

In May 2003, Defendant emerged from bankruptcy and Edward Lampert (age 41) was named Chairman of the Board of Directors. Plaintiff testified that shortly thereafter, Lampert initiated a conversation with him. Plaintiff testified as follows:

> Q. And what was said during the conversation you had with Eddie Lampert?
>
> A. He had talked to me about store operations and what I was doing, and he said to me, "You know, you've been around here a long time."
>
> Q. And that's all you can remember about the conversation?
>
> A. Well, that's what he said to me, and I said, "What does that mean?" And he said, "You've been around a long time." And I said, "Yes, and I performed very well this whole time period." And he said, "Well, there's some things I don't like that's going on in the store operations," and I said, "Okay. What is it?" But he didn't say anything. He just didn't come up with anything, and he pretty much got up and left my office.

(ROA 763.)

Rod Brumley, a former employee of Defendant, testified that in May 2003, he had a conversation with Lampert about a refund-policy sign they saw in a store they had visited. Lampert told Brumley "that's what's wrong with these Kmart people, that old way of thinking." (ROA 880.) When questioned further about this conversation, Brumley testified as follows:

> Q. Have you ever heard anybody make any derogatory comments about Mr. Marsico related to his age? . . .
>
> A. Well, the comment Lampert made in regards to that old K-Mart guys, meaning Marsico.
>
> Q. That he referred – that Mr. Marsico told you.
>
> A. No, no. That's what Lampert told me on the sidewalk about the – Remember I was telling you about the –
>
> Q. Well, while he was talking about the policy with respect to the refund.
>
> A. Yeah, but I interpret it as he was talking about Marsico and Marsico was old school.
>
> Q. Why did you interpret it to be about Marsico?
>
> A. Because Marsico was in charge of store operations.
>
> Q. Well, I thought you got the answer about what was going to happen with this policy not from Mr. Marsico, but from somebody else?
>
> A. But Marsico's guy that works for Marsico. It was Marsico's decision.

(ROA 895.)

Plaintiff served in the SVP position from February 2003 through September 2003. Plaintiff testified that in September 2003, Day told him he "wanted to make a change, that Super K was losing

money, and wanted me to go over and change the results." (ROA 759.) He testified that Day stated, "if we don't get them profitable we're going to close them and he said you're the person that could go over there and fix them, and I need you to do that." (ROA 792.) Plaintiff testified that he received the same salary, thought it was a lateral move, and thought the move would be temporary, although he admits that Day did not tell him that he would return to his previous position.

Sears contends Plaintiff was removed from the SVP position based on performance reasons—because the "allocation of store staffing hours" and the financial performance of "ancillary elements" such as kiosks had not improved under Plaintiff's management. (ROA 561.) Defendant claims that Plaintiff assumed the new title of "Vice President of Super K and Caribbean" in October 2003. Plaintiff testified that he initially continued reporting to Day, but that he later began reporting to Dene Rogers, who assumed Plaintiff's previous duties leading Store Operations.

Rogers, who was born in 1960, entered into a three-month consulting agreement with Defendant in September 2003, one month before Plaintiff assumed the responsibility of Vice President of Super Kmart centers. Rogers testified that before he was hired for the three-month contract, he did not know where he was going to be placed, but that he "was told by Julian Day that [he] would help in the store operations area on day one." (ROA 840.) He testified that he spent most of his time in this area and that he worked closely with Lampert and Day in this role. In February 2004, Rogers was hired in a permanent capacity and named Head of Store Operations. Within a few months, he was promoted to the position of Senior Vice President of Stores. At this point he had responsibility for headquarters functions supporting the stores as well as the stores themselves and became Plaintiff's direct supervisor.

4

Marsico continued managing the Super K centers and claims that based on his review of the profit and loss statements supplied during discovery, Super K went from substantial losses to a profit during the time he was responsible for Super K operations. He also argues that between 2003 and 2004, the gain in profit for Super Kmart was twice the rate of profit increase for Kmart.

Through March 2004, Marsico retained the $385,000 annual salary he had received as SVP. Day testified that he delayed reducing Defendant's salary in order to minimize the impact on Marsico's personal finances. In April 2004, Day notified Marsico that his pay would be reduced to $250,000. According to Marsico, Day told him that the reduction was necessary to make his salary more consistent with the salaries of other regional vice presidents. After negotiations between Plaintiff and Day, Plaintiff's salary was set at $275,000, effective July 2004.

Plaintiff testified that he and Day had a business dinner in November 2004, during which they discussed Plaintiff's employment. Plaintiff testified as follows:

> Q: What did [Day] say?
>
> A. Just said that, "Dene's going to stay in that position and you know, if you – I think you may have a hard time working with him, and if you really want to look somewhere else, I can try to help you. I owe you. You've done a great job for me. I'm going to see what I can do."
>
> Q. And what did you say in response to his statements?
>
> A. I said I was disappointed, because I thought I could go back and, you know, run the store operations.
>
> Q. And what did he say?
>
> A. He reiterated again to me that Eddie [Lampert] doesn't think that someone's that's been around for 30 years can fix Kmart.
>
> Q. And did you have a response to that?

A. I said I was disappointed.

(ROA 770.) Plaintiff testified that in late November 2004, Rogers indicated to Plaintiff that the Super Kmart Stores would report to the regional vice president of Kmart and that Plaintiff's position would be eliminated. Plaintiff told Rogers that the integration was not wise, and that at the very least, it should be postponed until after the holiday season. Plaintiff testified that he and Rogers had the following conversation:

> We were discussing the integration and [Rogers] was talking about moving into Kmart, and I said, "Well, once we do that, eventually what will I do?" And he says, "Well, I've talked to Alynn about you going over into the Sears position," and I said "Okay." And we talked a little more, and he was a bit distracted because he was typing at the time he was talking to me on the computer, and I said, "You know, I really have been around for 30 years. I can really be a benefit to the company." And I don't think he heard what I said, but he said to me, "Maybe you should look for another job." And I said, "Yeah, but I've been around 30 years. I've given everything to this company. I've worked long hours, given up vacations, everything, and I just want to be treated fairly." He said, "You know what, Dave? Nobody really cares about you anyway." And that's how it kind of ended. There was a dinner that night, but I didn't go. I was you know, verbally, you know, I was kind of upset.

(ROA 779.) Plaintiff further testified that in November 2004, Dave Whipple, Vice President of Human Resources, "made it clear to me that I would not be recommended for a job with Sears. He said that it was Dene Rogers who was not recommending me for a position with Sears." Marsico also noted that Rogers told him that William Crowley, Senior Vice President of Finance, wanted Marsico "gone" from the company. (ROA 796.)

On February 16, 2005, Marsico submitted a letter of resignation which stated, *inter alia*, that

> [S]ince being replaced . . . by a younger man, the working environment has become increasingly intolerable. There have been

6

> comments made to me, such as, "you have been here a long time," "you should think about leaving," "you need to find another job" and "no one really cares about you anyway." There were arbitrary decisions made about matters within my area of responsibility without consulting or informing me beforehand. . . . These types of actions and comments have hurt me very much, to the extent that I feel compelled to resign. . . . I can no longer be productive in an environment that has become deliberately hostile. I personally feel harassed and humiliated. I feel that I am not welcome any longer.

(ROA 935.) Rogers testified that at the time Plaintiff resigned, he did not intend to terminate Plaintiff's employment, and that Marsico would have been transferred over to Sears Holdings after the merger. After his resignation, Marsico became employed by Meijer as a Market Director with an annual salary of $150,000.

**B.      Procedural History**

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 20, 2005. On January 18, 2006, Marsico filed a four-count complaint in the United States District Court for the Eastern District of Michigan. Counts I and III alleged that Defendant demoted and constructively discharged Marsico because of his age, in violation of the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. §§ 622 *et seq.*, and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. §§ 37.2101 *et seq*. Counts II and IV of the complaint, alleging "disparate impact," were later withdrawn.

During discovery, Plaintiff filed a motion to compel the depositions of Edward Lampert, Chairman of the Board, and William Crowley, Senior Vice President of Finance. On January 17, 2007, the magistrate judge denied Plaintiff's motion. The district court affirmed the magistrate judge's order.

7

Defendant filed a motion for summary judgment on April 2, 2007. The district court granted Defendant's motion for summary judgment on August 30, 2007, concluding that Plaintiff's ADEA claim was time-barred and that Plaintiff could not prevail on his ELCRA claim. Plaintiff timely appealed the grant of summary judgment on both bases as well as the district court's denial of his motion to depose Lampert and Crowley.

## II. DISCUSSION

### A. Standard of Review

This Court reviews *de novo* a district court's grant of a motion for summary judgment. *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006). A moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The burden is initially upon the moving party to show that there does not remain in dispute any genuine issue of material fact. *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006). The moving party may satisfy this burden by pointing out to the district court that there is no evidence underlying the non-moving party's case. *Id.* Once the moving party supports its motion for summary judgment, the opposing party must go beyond the contents of its pleadings to set forth specific facts indicating the existence of a genuine issue to be litigated. Fed. R. Civ. P. 56(e). When a court thereafter reviews the record, it is to draw all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the proper inquiry is whether the state of the evidence is such that a

reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

We review an order denying further discovery for abuse of discretion. *See Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 903 (6th Cir. 2009). "An order denying further discovery will be grounds for reversal only if it was an abuse of discretion resulting in substantial prejudice." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (internal quotation marks omitted). A district court does not abuse its discretion in denying further discovery when the discovery requested is irrelevant to the underlying issue to be decided. *Green v. Nevers*, 196 F.3d 627, 632 (6th Cir. 1999).

## B.    Analysis

Plaintiffs can establish age discrimination in two different ways. One way a plaintiff can show discrimination is by presenting direct evidence of discrimination. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). In the absence of direct evidence, plaintiffs can show discrimination using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified by *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). In order to establish a *prima facie* case of age discrimination under this framework, a plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for his job; and (4) he was replaced by someone outside of the protected class. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547 (6th Cir. 2004); *see McDonnell Douglas*, 411 U.S. at 802.

If Plaintiff establishes a *prima facie* case of age discrimination, then the burden shifts to Defendant to proffer a legitimate, non-discriminatory reason for the adverse employment action. *Rowan*, 360 F.3d at 547. If Defendant does so, then the burden shifts back to Plaintiff to demonstrate that Defendant's proffered reason is merely pretextual. *Id.* In order to show pretext, Plaintiff must show either "that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

Marsico has set forth possible direct evidence and circumstantial evidence of age discrimination. The potentially ageist comments Marsico references may constitute direct evidence. With respect to Marsico's circumstantial evidence that he was replaced by a younger employee, the *McDonnell Douglas* framework applies. The parties agree that Marsico established a *prima facie* case of age discrimination. The parties also agree that Kmart proffered poor work performance by Marsico as the legitimate, non-discriminatory reason for the adverse employment action. In particular, Julian Day testified that Marsico was removed from Store Operations because the "allocation of store staffing hours" and the financial performance of "things like kiosks" in the Kmart stores did not improve under Marsico's leadership. (ROA 561.) Marsico contends that Kmart's proffered reason is pretextual.

Plaintiff offers several pieces of evidence to support his claim of age discrimination. For instance, Plaintiff contends that "upper management, particularly Eddie Lampert, had a bias against older employees." (Pl.'s Br. 38.) In support of this contention, Marsico points to Rod Brumley's testimony that while discussing the refund-policy sign in one of the Kmart stores, Lampert

commented that "that's what's wrong with these Kmart people, that old way of thinking," which Brumley interpreted as an ageist reference to Marsico. (ROA 880.) Lampert also stated that Marsico had "been around a long time." (ROA 763.) Marsico references Day's statement that Lampert did not "think that someone[] that's been around for 30 years [could] fix Kmart" and Rogers' comment that Crowley wanted Marsico "gone" from the company (ROA 770, 796.) Plaintiff contends that the district court improperly denied his motion to compel the depositions of Lampert and Crowley, which Plaintiff says are necessary in order to determine whether these comments were motivated by discriminatory intent.

"The scope of discovery is . . . within the broad discretion of the trial court." *Lewis,* 135 F.3d at 402. Nonetheless, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Conti*, 326 F. App'x at 904 (quoting *Lewis*, 135 F.3d at 402). Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding *any nonprivileged matter that is relevant to any party's claim or defense*--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." (emphasis added).

Discovery is an integral part of the trial process, *see Transition Healthcare Assocs., Inc. v. Tri-State Health Investors, LLC*, 306 F. App'x 273, 278 (6th Cir. 2009) (noting that a party needs sufficient time for discovery in order to develop facts needed to oppose a motion for summary judgment), and enables the parties to "develop fully and crystalize concise factual issues for trial." *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973). The Supreme Court has stated

that because "discovery itself is designed to help define and clarify the issue," Federal Rule of Civil Procedure 26 has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *accord Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991) ("A plaintiff who must shoulder the burden of proving that the reasons given for her [adverse employment action] are pretextual should not normally be denied the information necessary to establish that claim.").

We do not think the record leads to an inescapable conclusion that Lampert and Crowley's comments were not motivated by age discrimination. Marsico points to Lampert's statement to Brumley that "that's what's wrong with these Kmart people, that old way of thinking," and Lampert's comment that Marsico had "been around a long time." (ROA 763, 880.) Marsico also points to Day's statement that Lampert did not "think that someone[] that's been around for 30 years [could] fix Kmart" and Rogers' comment to Marsico that Crowley wanted Marsico "gone" from the company. (ROA 770, 796.) Although it is true that such comments do not necessarily establish age discrimination, *see Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611-12 (1993), they may be indicative of discriminatory intent. Since the scope of discovery is broad, we will not assume, without further discovery, that these comments fail to demonstrate discriminatory intent.

It was through the discovery already conducted that Plaintiff obtained the evidence represented by witnesses' comments, and given the substance of the comments, there is enough evidence of discriminatory intent such that additional discovery should have been permitted. No one but Lampert and Crowley can testify as to whether the comments cited by Marsico were motivated

12

by age discrimination as indicated by the context and circumstances in which the comments were made. Plaintiff should have been allowed to elicit such testimony and use it in responding to Defendant's motion for summary judgment. Accordingly, we conclude that the district court abused its discretion in denying Plaintiff's motion to compel the depositions and hold that Marsico may depose both Lampert and Crowley. We need not address Marsico's other arguments regarding pretext or the remaining issues at this time.

## III. CONCLUSION

We conclude that the district court abused its discretion in denying Plaintiff's motion to compel the depositions of Lampert and Crowley. Plaintiff should have been allowed to utilize the evidence obtained from these depositions in responding to Defendant's motion for summary judgment. Accordingly, the district court's grant of summary judgment is **REVERSED** and the case is **REMANDED** to the district court with instructions to allow Plaintiff to depose Lampert and Crowley.

KETHLEDGE, Circuit Judge, dissenting.

The record as it now stands, in my view, does not create a genuine issue of material fact as to whether the stated reasons for Marsico's demotion were a pretext for age discrimination. The question before us is whether the district court improperly truncated that record when it refused to compel the depositions of Lampert and Crowley. That is a difficult argument on which to prevail. Trial courts have broad discretion to determine the scope of discovery. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). "'An order denying further discovery will be grounds for reversal only if it was an abuse of discretion resulting in substantial prejudice.'" *Id.* (quoting *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)).

I respectfully disagree with the majority's conclusion that Marsico has demonstrated substantial prejudice here. That the new management of a bankrupt company should criticize the company's "old way of thinking[,]" and express skepticism "that someone[] that's been around for 30 years can fix Kmart[,]" does not seem to me so extraordinary as to allow this court, rather than the district court, to take control of the discovery process. I would affirm the judgment of the district court.